Arch *v.* Slovene National Benefit Society,
Appellant.

Argued April 13, 1957. Before RHODES, P. J., HIRT,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS,
JJ.

*Francis Taptich,* for appellant.

*Frank R. Bolte,* for appellee.

OPINION BY WATKINS, J., September 30, 1957:

This is an action in assumpsit for salary alleged to be due to Dr. F. J. Arch, the appellee, as the Supreme Medical Director of the Slovene National Benefit Society.

The appellant is a corporation, a fraternal benefit Society, organized and incorporated under the laws of the State of Illinois, having its present place of business in the City of Chicago in said State, and organized to do business in Pennsylvania, by and through its subordinate lodges.

The 12th regular convention of the appellant Society was held at Pittsburgh from September 13 to September 24, 1941, inclusive. This convention consisted of 19 sessions held during the above period, and was assembled by virtue of the Constitution and By-Laws of the Society.

Changes made in the by-laws are at issue in this case. Until this convention of the appellant Society the Medical Examiner was an appointed officer and was not a member of the Supreme Board. A resolution was adopted at the convention that the by-law committee be instructed to prepare an amendment to the by-laws to provide that a Supreme Medical Director should be elected at the convention in the manner provided for the election of other Supreme Board members and that he be declared a member of the Supreme Board. The resolution further provided that any member of the Society with qualifications as provided in the by-laws shall have the right to submit his name for election. At a subsequent session of the convention but prior to the completion of the new by-laws, the appellee, was elected Supreme Medical Director. Prior to his election the following appears in the minutes of the convention, "By-Laws Committee reports provisions for Medical Director are not completed but are con-

tained in resolution". This resolution clearly bound the appellee because it specifically stated, "Any member of the Society with qualifications as provided in the By-Laws shall have the right to submit his name for election", and he was advised that the by-laws in question had not been completed. His election therefore to a position, the term of which was to begin January 1, 1942, as provided by the by-laws was also contingent on qualifications provided in by-laws to be adopted, also effective January 1, 1942. The qualifications of the new Supreme Medical Director were fully set forth and adopted at the same session at which he was elected. One of the newly adopted by-laws provided "No Supreme Board member of any other fraternal Society or organization shall be eligible, and no Supreme Board member of this Society shall be a Supreme Board member of any other fraternal Society". Another by-law that has a part in this proceeding, adopted at this convention, increased the salary of the new Supreme Medical Director from $75. to $100. a month.

At the time his name was placed in nomination, and at the time of his election, the appellee was a Medical Director and a member of the Supreme Board of another fraternal Society. This was called to his attention at the time of his nomination and prior to the adoption of the by-law prohibiting dual board membership. He stated then, that if elected, he was prepared to resign, if required. The by-law prohibiting dual membership, adopted at the same session that he was elected, clearly required his resignation.

The appellee assumed the office of Supreme Board member of appellant Society on January 1, 1942. At that time he was admittedly a Supreme Board member of another fraternal Society and continued so to be the entire time involved in this case.

The appellee was warned by the Supreme officers that he must resign as a member of the Supreme Board of the other Society in order to continue in office in the appellant Society. This the appellee refused to do. Charges were brought against him as provided in Section 131 of the by-laws, an open hearing was held and the matter decided against him. He was suspended in August of 1942 and was paid in full to the time of his suspension. The appellee brought this action of assumpsit in the County Court of Allegheny County for salary alleged to be due to him after his suspension for the balance of the 4-year term. The jury brought in a verdict of Three Thousand ($3,000.) Dollars, which was clearly based upon a $75. monthly salary, which was the old salary of the appointed Medical Examiner, before the adoption of the resolution that made the office elective, and before the adoption of the by-law fixing the salary at $100. per month, effective January 1, 1942.

This case was before this Court on appeal by the same appellant seeking judgment on the pleadings, *Arch v. Slovene National Benefit Society*, 156 Pa. Superior Ct. 64, 39 A. 2d 290 (1944). Judge JAMES, speaking for this Court, in refusing judgment on the pleadings and sending it back for trial said, "We will then perhaps know with some exactness when the new by-laws were adopted, their scope in relation to previously existing by-laws, the conditions under which plaintiff was elected, and the manner in which plaintiff was removed from office". He further said, "However, allowing full consideration of all the pleadings, we are still left in the dark as to whether prior or subsequent to plaintiff's election, the constitution and by-laws were adopted, and the further question of the conduct of the Supreme Board in its trial of the charges preferred against plaintiff".

We certainly are not now in the dark as regards these facts, and if that question were before us now we could unhesitatingly direct judgment to be entered on the pleadings.

The appellee at the time of his election, at the time he took office, and at the time of his suspension was not qualified for the position he held by virtue of the prohibition of dual board membership as set forth in the by-laws of the Society. The 12th Supreme Convention of the Slovene National Benefit Society was one continuous legislative body of a number of sessions. It is true that his election preceded the adoption of the pertinent by-law, although both actions took place at the same session. The effective date of the by-laws and the commencement of his term of office both were fixed as January 1, 1942 and the resolution upon which his election was based provided for his adherence to the by-laws. It was specifically set forth at the time of his election that the by-laws committee had not completed the provisions with regard to the Medical Director.

There was no evidence presented to the jury that the hearing of the charges against him was unfair, dishonest and partial, in fact, the question of membership on two beneficial Societies' Supreme Boards was admitted by the appellee and was the sole reason for his suspension. The only basis for the appellee's claim is the contention that his election at the 18th session of the convention gave him a contract for 4 years as the Supreme Medical Director of the Society and that any further action in regard thereto by the convention, which was still in session, would be null and void. With this contention we cannot agree. The qualifications of the new office to which he was elected and other by-laws affecting his office were adopted by the convention, subsequent in time, but in the same session that

elected him.  At the time of his election the matter of dual membership was called to his attention and the fact that such a by-law was being considered was discussed.  His answer as set forth in this opinion indicated his full knowledge of this situation.

This being the state of the record there is no question of fact to be determined by a jury.  The appellee admits that he was holding dual offices which is prohibited by the by-laws.  The Supreme President acting under his authority contained in the by-laws, "he shall observe strict enforcement of the laws and rules of the Society", proceeded against the appellee under the by-laws and following the procedure set forth therein, and after open hearing, suspended the appellee.  It was clearly within the rights of the Society to enforce their rules so long as the action taken was not unfair, dishonest and partial.  There was no such evidence and, of course, could hardly be, when the charges for which he was finally suspended were admitted from the very beginning by the appellee.

The only question at issue is not one of fact.  The facts are clear and are part of the record admitted by both sides.  The appellee was nominated for this newly created office at one session of the convention.  He was elected at a session held the next day.  At the time of his election the by-laws fixing his qualifications and the qualifications of Supreme Board members had not yet been presented for adoption.  They were so presented and adopted at the same session.

The appellee argues that he was permitted to assume office without objection.  This is true, but the Society was justified in relying on the statement of his intention to resign from the other office if so required by the by-laws.  At any time from January 1, 1942 to the time of his suspension he could have purged himself of disqualification by a resignation and the charge

against him would, of necessity, fail or be withdrawn.

The appellee contends that because he was elected for a 4-year term as Supreme Medical Director at a time when the dual membership by-law had not been adopted, the fact that it was adopted at a later time in the same session was not binding on him. With this contention we cannot agree, as the record clearly discloses that his term of office was to begin January 1, 1942 and the Constitution and By-Laws as amended at the convention were to be effective January 1, 1942. Any contract created by his election included the consideration of his obligation to, and his acceptance and adherence to the Constitution and By-Laws of the Society.

The following resolution adopted at the last session of the convention fully answers the question raised by Judge JAMES in *Arch v. Slovene National Benefit Society*, supra, as to when the new by-laws were adopted and their scope in relation to previously existing by-laws. "Resolved by the Twelfth Regular Convention of the Slovene National Benefit Society in session in Pittsburgh, Pennsylvania, from September 13, 1941 to September 24, 1941, both days inclusive, that the Executive Committee shall be given full power to correct the by-laws which are now in conflict with decisions of the Convention, and that all changes and amendments to its Charter, Constitution and By-Laws, and all other decisions made and accepted by said Convention be approved by roll call vote, and that the Constitution and By-Laws, adopted by this Convention shall become effective on January 1, 1942, after which date any provision of said Constitution or By-Laws not in accordance with the said changes and amendments shall become null and void".

Judgment reversed and now entered for the appellant.